# EXHIBIT A

SUMMONS

| | |
|---|---|
| Attorney(s) | Poulos LoPiccolo PC |
| Office Address | 1305 South Roller Rd. |
| Town, State, Zip Code | Ocean, NJ 07712 |
| Telephone Number | (732) 757-0165 |
| Attorney(s) for Plaintiff | Paul Logan |

Paul Logan, on behalf of himself and others similarly situated,

Plaintiff(s)

Vs.

Club Metro USA Limited Liability Company, Club Metro USA Franchising

Limited Liability Company, HFIG-Old Bridge, LLC, et. al.

Defendant(s)

**Superior Court of
New Jersey**

| | |
|---|---|
| Middlesex | COUNTY |
| Law | DIVISION |

Docket No:   MID-L-3877-15

**CIVIL ACTION
SUMMONS**

From The State of New Jersey To The Defendant(s) Named Above:

The plaintiff, named above, has filed a lawsuit against you in the Superior Court of New Jersey. The complaint attached to this summons states the basis for this lawsuit. If you dispute this complaint, you or your attorney must file a written answer or motion and proof of service with the deputy clerk of the Superior Court in the county listed above within 35 days from the date you received this summons, not counting the date you received it. (A directory of the addresses of each deputy clerk of the Superior Court is available in the Civil Division Management Office in the county listed above and online at http://www.judiciary.state.nj.us/pro se/10153 deptyclerklawref.pdf.) If the complaint is one in foreclosure, then you must file your written answer or motion and proof of service with the Clerk of the Superior Court, Hughes Justice Complex, P.O. Box 971, Trenton, NJ 08625-0971. A filing fee payable to the Treasurer, State of New Jersey and a completed Case Information Statement (available from the deputy clerk of the Superior Court) must accompany your answer or motion when it is filed. You must also send a copy of your answer or motion to plaintiff's attorney whose name and address appear above, or to plaintiff, if no attorney is named above. A telephone call will not protect your rights; you must file and serve a written answer or motion (with fee of $175.00 and completed Case Information Statement) if you want the court to hear your defense.

If you do not file and serve a written answer or motion within 35 days, the court may enter a judgment against you for the relief plaintiff demands, plus interest and costs of suit. If judgment is entered against you, the Sheriff may seize your money, wages or property to pay all or part of the judgment.

If you cannot afford an attorney, you may call the Legal Services office in the county where you live or the Legal Services of New Jersey Statewide Hotline at 1-888-LSNJ-LAW (1-888-576-5529). If you do not have an attorney and are not eligible for free legal assistance, you may obtain a referral to an attorney by calling one of the Lawyer Referral Services. A directory with contact information for local Legal Services Offices and Lawyer Referral Services is available in the Civil Division Management Office in the county listed above and online at http://www.judiciary.state.nj.us/prose/10153_deptyclerklawref.pdf.

*Michelle M. Smith*
Clerk of the Superior Court

DATED:     07/16/2015

Name of Defendant to Be Served:     Emilio Farina, registered agent for Club Metro USA Franchising Limited Liability Company

Address of Defendant to Be Served:     1400 Hooper Ave., Second Fl., Toms River, NJ 08753

Revised 11/17/2014, CN 10792-English (Appendix XII-A)



Joseph LoPiccolo N.J. Attorney ID #090792013
John N. Poulos, N.J. Attorney ID #030032001
**POULOS LoPICCOLO PC**
1305 South Roller Road
Ocean, NJ 07712
732-757-0165
lopiccolo@pllawfirm.com
poulos@pllawfirm.com

Andrew R. Wolf, N.J. Attorney ID #018621995
Henry P. Wolfe, N.J. Attorney ID #031942005
**THE WOLF LAW FIRM, LLC**
1520 U.S. Highway 130, Suite 101
North Brunswick, N.J. 08902
732-545-7900
awolf@wolflawfirm.net

*Attorneys for Paul Logan on behalf*
*of himself and others similarly*
*situated*

| | |
|---|---|
| Paul Logan, on behalf of himself and others similarly situated, | SUPERIOR COURT OF NEW JERSEY LAW DIVISION, MIDDLESEX COUNTY |
| Plaintiffs, | DOCKET NO.: MID-L-3877-15 |
| v. | CIVIL ACTION |
| Club Metro USA Limited Liability Company, Club Metro USA Franchising Limited Liability Company, HFIG-Old Bridge, LLC d/b/a Club Metro USA Old Bridge, ABC Financial Services Company, Inc., and John Does 1-100, Defendant Club Metro Franchises 1-75 and XYZ Corporations 1-10. | **CLASS ACTION COMPLAINT AND JURY DEMAND** |
| Defendants. | |

Plaintiff, through counsel, states for his Complaint on behalf of himself and others

similarly situated as follows:

## INTRODUCTION

1.      This is a putative consumer class action against Club Metro USA ("Club Metro") health clubs located in New Jersey and ABC Financial Services Company, Inc. (ABC Financial) for violating New Jersey consumer protection laws in connection with health club membership agreements, including the New Jersey Health Club Services Act (the "HCSA"), the Retail Installment Sales Act (RISA), the Consumer Fraud Act (the "CFA"), N.J.S.A. 56:8-1, *et seq.*, and the Truth-in Consumer Contract, Warranty, and Notice Act ("TCCWNA"), N.J.S.A. 56:12-14.

2.      Specifically Defendants' standardized health club membership agreements (the Membership Agreements") violate the HCSA and the CFA by providing for perpetually renewing monthly memberships upon expiration of the initial term. Moreover, the contract is drafted to discourage "cancellation" of the automatic renewals, rejecting any cancellation unless in writing, delivered by registered mail, return receipt requested, and providing that the cancellation is not effective until 30 days after it is received, thus requiring customers to pay for health club services they do not want or need.   Additionally, the membership agreements fail to comply with the HCSA regarding cancellation and/or refund in the event of the customers' death or relocation

3.      Defendant's health club memberships also violate RISA and the CFA by imposing fees and penalties that are not authorized by RISA, including a $50 enrollment fee, a $19.99 "club enhancement fee," and a $5 montly dues increase in the event that an EFT payment is declined.

4.      Plaintiff seeks damages for himself and a class of other customers who entered into similar membership agreements under the CFA and TCCWNA, as well as an injunction

2

against further violations of New Jersey law.

## PARTIES

5.  Plaintiff Paul Logan resides in Old Bridge, New Jersey.

6.  Defendants Club Metro USA Limited Liability Company, Club Metro USA Franchising Limited Liability Company, HFIG-Old Bridge, LLC d/b/a Club Metro USA Old Bridge are for-profit New Jersey entities that operate health clubs throughout New Jersey all under the name "Club Metro" (hereinafter collectively, "Club Metro Defendants")

7.  All of the Club Metro Defendants are "health club facilities" covered by the HCSA.

8.  Defendant ABC Financial Services ("ABC Financial") is a foreign corporation with offices in Sherwood, Arkansa, which acted in concert with the Club Metro Defendants in the sale and financing of the health club services at issue.

9.  Defendants Club Metro Franchises 1-75 are fictitious names of Club Metro health club franchises located in the State of New Jersey whose policies, procedures and practices are the same and/or substantially similar to the Club Metro health club franchises specifically named as Defendants herein, whose identity may be disclosed in discovery and should be made parties to this action.

10.  Defendants John/Jane DOES 5-100 are fictitious names of individuals who are an officer, owner, director, supervisor, manager, employee, agent and/or representative of a named Club Metro health club franchise or Defendant Club Metro Franchises 1-75, who set the policies, procedures and practices for a Club Metro health club franchise, alleged for the purpose of

3

substituting their names for those of any additional defendants whose identity may be disclosed in discovery and should be made parties to this action.

11.     XYZ CORPORATIONS 1-10 are fictitious names of businesses alleged for the purpose of substituting their names for those of any additional defendants whose identity may be disclosed in discovery and should be made parties to this action

## ALLEGATIONS OF FACT

### Club Metro's Standard Membership Agreement

12.     Plaintiffs and all others similarly situated are buyers of health club services.

13.     Club Metro USA Franchising Limited Liability Company ("Club Metro") is a corporation and/or entity which sells franchises for Club Metro health clubs located throughout the State of New Jersey. At present, there are approximately 16 Club Metro health clubs in New Jersey, with more locations scheduled to open.

14.     Club Metro markets its franchises to potential buyers with the representation that, "As a Club Metro USA franchisee, you will have the benefit of being a part of a team who is redefining and setting a new standard in where the world is going in fitness and wellness. Choose Club Metro USA ... where you'll be in business for yourself but not by yourself!" A Copy of the Club Metro "Franchise Opportunity" page of its website is attached hereto as Exhibit A.

15.     Upon information and belief, Club Metro, through its directors, executives, management, franchise agreements and/or operations manuals and/or outside vendors which its franchisees are required to use, sets, controls and/or directs the policies, practices and procedures for all of its franchisees and/or plays an active role in the operations of each Club Metro health club franchise in the State of New Jersey.

4

16.     Upon information and belief, each Club Metro health club franchise in the State of

New Jersey is directed and controlled by Club Metro as follows:

a.  Club Metro finds and/or pays and directs employees and/or contracts with outside
vendors/consultants such as ABC to find the new locations in the State of New
Jersey where each Club Metro health club franchise may open and do business;

b.  Club Metro directs and controls and/or pays and directs employees and/or
contracts with outside vendors/consultants such as ABC to direct and control the
marketing of each Club Metro health club franchise in the State of New Jersey,
including branding colors, logos, slogans, names, and website marketing;

c.  Club Metro creates, monitors and enforces and/or pays and directs employees
and/or contracts with outside vendors/consultants such as ABC to create, monitor
and enforce the business model, the business strategies, the business policies,
practices and procedures, and the business documents for each Club Metro health
club franchise in the State of New Jersey;

d.  Club Metro creates, monitors and enforces and/or pays and directs employees
and/or contracts with outside vendors/consultants such as ABC to create, monitor
and enforce cancellation policies and billing practices for each Club Metro health
club franchise in the State of New Jersey;

e.  Club Metro and/or its outside vendors/consultants such as ABC shares both
physical and human resources with each Club Metro health club franchise in the
State of New Jersey; and

f.  Club Metro controls, monitors and enforces and/or pays and directs employees
and/or contracts with outside vendors/consultants such as ABC to control,
monitor and enforce the payment of profits and/or fees from each Club Metro
health club franchise in the State of New Jersey.

17.    Each Club Metro health club franchise in the State of New Jersey, including HFIG-

Old Bridge, LLC d/b/a Club Metro USA Old Bridge (hereinafter the "Franchise Defendants")

were, at all times relevant herein, required, by Club Metro, to strictly follow the policies and

procedures set forth by Club Metro in their franchise agreements or Operations Manual, including

using only the vendors, materials, documents and equipment provided by those vendors approved

by Club Metro.

5

18.     Club Metro's requirement that its New Jersey Franchisees follow the policies and procedures set forth by Club Metro, including using only approved vendors such as ABC, and materials, documents and equipment provided by those approved vendors, results in a financial benefit to Club Metro.

19.     Club Metro, at all times relevant herein, required its New Jersey franchisees to use specific documents and/or language, including the form and/or language of the Membership Agreements used in their transactions with Plaintiff.

20.     The use of specific language required by Club Metro to be in the Membership Agreements results in a financial benefit to Club Metro.

21.     ABC, through its directors, executives, management, documents, materials and/or computerized systems sets, controls and/or directs the policies, practices and procedures used by all of the Franchise Defendants related to the billing, cancellation and/or collection policies of each Club Metro health club franchise in the State of New Jersey.

22.     ABC, through its directors, executives, management, documents, materials and/or computerized systems plays an active role in the billing, cancellation and/or collection policies of each Club Metro health club franchise in the State of New Jersey.

23.     Club Metro and ABC have a direct and/or indirect agreement.

24.     On information and belief, the agreement between Club Metro and ABC includes a provision or provisions whereby:

   a.  ABC is the only Club Metro-approved vendor to be the billing, cancellations and/or collection agent for each Club Metro health club franchise in the State of New Jersey;

   b.  ABC is required to collect all membership dues and other fees payable by members to each Club Metro health club franchise in the State of New Jersey;

   c.  ABC is required to calculate and deduct from the monthly receipts of each Club Metro health club franchise in the State of New Jersey any all sums that each

6

Club Metro health club franchise in the State of New Jersey owes to Club Metro; and

d. ABC is required to remit to Club metro all sums that it collects from each Club Metro health club franchise in the State of New Jersey that are due and payable to Club Metro.

25.     Each Club Metro health club franchise in the State of New Jersey uses ABC to provide financial services, including billing, collections and cancellation of health club memberships, in their operation of the Club Metro health club franchises.

26.     Club Metro requires each Club Metro health club franchise in the State of New Jersey to use ABC to provide financial services, including billing, cancellation of health club memberships and collections, in their operation of the Club Metro health club franchises.

27.     Club Metro's relationship with ABC and requirement that each Club Metro health club franchise in the State of New Jersey use ABC as its billing and collections agent results in a direct financial benefit to Club Metro.

28.     At all times relevant herein, the form and/or language of the Membership Agreements used by the franchise Defendants in transactions with Plaintiff and those similarly situated was prepared, drafted, dictated and/or controlled by Club Metro, either directly and/or through ABC.

29.     In the alternative, at all times relevant herein, ABC, in furtherance of its agreement with Club Metro, prepared, drafted, dictated and/or controlled the form and/or language of the Membership Agreements used in transactions with Plaintiff and those similarly situated.

30.     Club Metro, ABC and the franchise Defendants acted in concert and/or engaged in a joint venture with respect to all aspects of the health club membership contracts entered into between the Franchise Defendants and New Jersey consumers including the drafting and performance of the contracts.

7

31.   Defendant Club Metro Franchises 1-75 engaged in the same and/or substantially similar conduct, including the use of the same and/or substantially similar Membership Agreements as the Membership Agreements used by the named franchise Defendants in their respective transactions with Plaintiffs to enroll other persons in health club memberships.

The Membership Agreements

32.   On or around November 19, 2010, Plaintiff entered into a Membership Agreement for health club services at the Club Metro in Old Bridge, New Jersey. A copy of the Membership Agreement is attached hereto as Exhibit B.

33.   The Membership Agreement used in Plaintiff's transaction was a form contract that was the same as or substantially similar to the form contract used by all the Defendants in their other New Jersey transactions during the proposed class period described in ¶ 46 of this Complaint.

34.   The Membership Agreement provided for a one year membership payable in 10 monthly installments of $21.39, with an initial payment of the first and last months' payments, plus a $50 "Enrollment Fee."

35.   The Membership Agreement includes an acceleration clause obligating the member to pay the "entire remaining balance" for the whole term upon non-payment of an installment payment for more than 10 days.

36.   The Membership Agreement charges various fees and penalties, including:

   a.   A $50 "enrollment fee,"

   b.   a $19.99 "club enhancement fee,"

   c.   a $5 monthly dues increase in the event that an EFT payment is declined,

   d.   an unspecified "late fee" if a monthly installment payment is received more

8

than 10 days late.

37.     The Membership Agreement includes an "Automatic Renewal" provision, whereby the customer is obligated to continue to make monthly payments in perpetuity after the expiration of the initial membership term unless members meet the condition subsequent of notifying Defendants in writing by certified or registered mail, return receipt requested, that they no longer wish to receive additional month-to-month memberships.

38.     Defendants imposed the conditions precedent in order to impede members' attempts to extinguish the automatic renewal of their memberships at the end of their initial contract terms.

39.     The Membership Agreement has numerous provisions that are contrary to the HCSA, including without limitation:

a. The Membership Agreement includes a provision creating an automatic renewal obligation (subject to conditions subsequent) contrary to the HSCA's prohibition against renewal obligations at N.J.S.A. 56:8-42(i);

b. The Membership Agreement provides for new or increased health club services on a monthly basis after the initial term, without also requiring the health club to provide the member with a notice of the member's three-day right to cancel notice for each new month of services, contrary to the HSCA's requirments at N.J.S.A. 56:8-42(e);

c. The Membership Agreement provides that in the event of cancellation by notice of the member's death or permanent disability, the Defendants "may retain 10% (but not to exceed 10%) of the total contract price based on the date Club Metro USA receives notice."   This provision is contrary to the

9

HSCA, which only permits the health club to "retain the portion of the total contract price representing the services used plus reimbursement for expenses incurred in an amount not to exceed 10% of the total contract price." N.J.S.A. 56:8-42(f).

d.  The Membership Agreement imposes a requirement that in the event of cancellation due to death or permanent disability, Club Metro "must be notified ten days prior to next monthly "billing" contrary to the consumers' right to cancel under these circumstances with no such time limitation.

e.  The Membership Agreement provides that in the event of cancellation by notice of the member's permanent relocation more than 25 miles from the facility, the Defendants "shall retain 10% (but not to exceed 10%) of the total contract price based on the date Club Metro USA receives notice." This provision is contrary to the HSCA, which provides that the health club to "may retain a prorated share of the total contract price based upon the date the notice was received plus reimbursement for expenses incurred in an amount not to exceed 10%." N.J.S.A. 56:8-42(g).

f.  The Membership Agreement does not set forth on the first page of the Agreements the buyer's total payment obligation under the contract, pursuant to N.J.S.A. 56:8-42(b).

**Plaintiff's Attempt to Cancel Health Club Services Beyond His Initial Term**

40.  After the expiration of the initial one year term of his membership in October 2013, Plaintiff notified the staff in charge of the Club Metro facility in Old Bridge in person that he no longer wished for continued, monthly memberships.

10

41.    Despite being notified numerous times by Plaintiff in person that Plaintiff no longer wants continued health club services beyond his initial one year membership, and despite the fact that Plaintiff has not continued to use Defendants' facilities, Defendants continued to charge and automatically debit Plaintiff for dues.

42.    Because Defendants continued to ignore Plaintiffs requests to discontinue his monthly membership with Defendants, on April 15, 2015, Plaintiff sent a letter to Club Metro at 2685 Highway 516, Old Bridge, NJ 08857 via certified mail, return receipt requested notifying Defendants that he no longer wants continued health club services beyone his initial one year membership. A copy of the letter and return receipt are attached hereto as **Exhibit C.**

43.    Then on April 30, 2015, Eric Reilly of ABC Financial called Plaintiff and left a message informing him that they were not able to charge his credit card for the monthly dues because his credit card information has changed and requested that Plaintiff call Mr. Reilly back to provide ABC Financial the updated credit card information so they can continue charging his monthly membership dues.

44.    Despite these numerous and various methods of notice to Defendants and despite not using any Club Metro facilities since October 2013, Defendants have continued to charge Plaintiff's credit card for membership dues  Indeed, as of the date of this Complaint, Defendants have charged Plaintiff dues beyond his one year term of no less than $213.90 and continue to harass Plaintiff for payment.

### CLASS ACTION ALLEGATIONS

45.    This action is brought and may properly proceed as a class action, pursuant to the provisions of R. 4:32.  Plaintiff brings this action on behalf of himself

11

and all others similarly situated.

46.     Plaintiff seeks certification of a Class and a Subclass, initially defined as

follows:

The Class:  (for certification as to claims under the Truth in Consumer

Contract, Warranty and Notice Act (TCCWNA) relating to the Defendants'

form Membership Agreement):

> All current New Jersey residents who, during the proposed
> class period, entered into a Membership Agreement for any
> Club Metro New Jersey facility that was the same as or
> substantially similar to the Membership Agreement used
> in the Plaintiff's transactions.

Subclass (for certification as to claims under the Consumer Fraud Act (CFA)

for membership dues improperly collected pursuant to the automatic renewal

provisions of the Membership Agreement):

> All Class members from whom any Defendant received a
> communication to discontinue services after the initial
> membership period expired, and who were charged
> membership dues for any subsequent month(s).

The proposed class period is the period beginning on the date six years

prior to the date of filing of the Complaint and ending on the date, if any,

when this case is resolved.

Specifically excluded from the Class and Subclasses is any judge or

magistrate involved in this matter.

47.     The Class and Subclass for whose benefit this action is brought is so numerous

that joinder of all members is impracticable.

48.     There are questions of law and fact common to the members of the Class and

12

Subclass that predominate over questions affecting only individuals. These common
questions include, but are not limited to:

     a.  Whether the standard form Membership Agreement is a perpetual contract
        that requires monthly payments or, in the alternative, whether the standard
        form Membership Agreement is a contract for a term of a specified period
        but which renews automatically, in perpetuity;

     b.  Whether the standard form Membership Agreement contains terms that
        violate any provision of the HCSA, N.J.S.A. 56:8-39 et seq., and the CFA,
        N.J.S.A. 56:8-1 *et seq.*

     c.  Whether the standard form Membership Agreement violates the Truth-
        in-Consumer Contract, Warranty and Notice Act, N.J.S.A. 56:12-14, et
        seq.

     d.  Whether the Defendants' Membershp Agreement provision permitting
        Defendant to continue to charge members for dues after their initial
        terms in perpetuity until they send a notice by registered or certified
        mail, return receipt requested is an unconscionable commercial
        practice in violation of the CFA at N.J.S.A. 556:8-2.

     e.  Whether the Plaintiff or the members of the Subclass suffered
        ascertainable loss.

    49.    Plaintiff's claims are typical of the claims of the members of the Class
and Subclass they represent because all such claims arise out of the sale of health
club memberships using form documents the same as or similar to those used in the
transaction with Plaintiff.

50.    Plaintiff has no interests antagonistic to those of the Class or Subclasses.

51.    The Class and Subclass, of which Plaintiff is a member, are readily identifiable from Defendant's records.

52.    Plaintiff will fairly and adequately protect the interests of the Class and Subclass, and has retained competent counsel experienced in the prosecution of consumer litigation.  Proposed Class Counsel have investigated and identified potential claims in the action; have a great deal of experience in handling class actions, other complex litigation, and claims of the type asserted in this action.

53.    A class action is superior to other available methods for the fair and efficient adjudication of this controversy because it is economically impractical for members of the Class and Subclass to prosecute individual actions.

54.    The questions of law or fact common to the members of the Class and Subclass predominate over any questions affecting only individual members.

55.    The prosecution of separate actions by individual members of the Class and/or Subclass would run the risk of inconsistent or varying adjudications, which would establish incompatible standards of conduct for the Defendants in this action. Prosecution as a class action will eliminate the possibility of repetitious litigation.

56.    The prosecution of separate actions by individual members of the Class and/or Subclass would create the risk that adjudications with respect to individual members of the class would as a practical matter be dispositive of the interests of the other members not parties to the adjudications or substantially impair or impede their ability to protect their interests.

57.    A class action will cause an orderly and expeditious administration of the claims

14

of the Class and/or Subclass and will foster economies of time, effort and expense.

58.    Plaintiff does not anticipate any difficulty in the management of this litigation.

## CLASS ACTION CLAIMS

**FIRST COUNT (On Behalf of the Plaintiff and the entire Class)**
**Violations of the Truth-in-Consumer Contract, Warranty and Notice Act (TCCWNA)**
**N.J.S.A. 56:12-14 *et seq.***

59.    Plaintiff realleges all preceding allegations as though fully pled here.

60.    TCCWNA, at N.J.S.A. 56:12-15, prohibits businesses from offering or giving written contracts or notices to consumers that contain any provision that violates the consumers' rights or business's responsibilities under clearly established New Jersey or federal law, and provides remedies to consumers who are offered or given such contracts or notices, including statutory damages of not less than $100, actual damages, or both. N.J.S.A. 56:12-17.

61.    Defendants are "sellers" as defined by the CFA, N.J.S.A. 56:8-1, *et seq.*

62.    Defendants are "health clubs" as defined by the Health Club Services Act ("HCSA") at N.J.S.A. 56:8-39.

63.    Defendants' standard form Membership Agreement is a "health club services contract" as defined by the HCSA at N.J.S.A. 56:8-39.

64.    Defendants violated TCCWNA with respect to Plaintiff and the putative Class members by offering and/or entering into form Membership Agreements with provisions violating the Plaintiff's and the putative class members' rights and Defendants' responsibilities under the HCSA and the CFA, including, but not limited to, the following:

a. The Membership Agreement includes a provision creating an automatic

15

renewal obligation (subject to conditions subsequent) contrary to the HSCA's prohibition against renewal obligations at N.J.S.A. 56:8-42(i);

b. The Membership Agreement provides for new or increased health club services on a monthly basis after the intial term, without also requiring the health club to provide the member with a notice of the member's three-day right to cancel notice for each new month of services, contrary to the HSCA's requirments at N.J.S.A. 56:8-42(e);

c. The Membership Agreement provides that in the event of cancellation by notice of the member's death or permanent disability, the Defendants "may retain 10% (but not to exceed 10%) of the total contract price based on the date Club Metro USA receives notice." This provision is contrary to the HSCA, which only permits the health club to "retain the portion of the total contract price representing the services used plus reimbursement for expenses incurred in an amount not to exceed 10% of the total contract price." N.J.S.A. 56:8-42(f).

d. The Membersehip Agreement imposes a requirement that in the event of cancellation due to death or permanent disability, Club Metro "must be notified ten days prior to next monthfy "billing" contrarty to the consumers' right to cancel under these circumstances with no such time limitation.

e. The Membership Agreement provides that in the event of cancellation by notice of the member's permanent relocation more than 25 miles from the facility, the Defendants "shall retain 10% (but not to exceed 10%) of the total contract price based on the date Club Metro USA receives notice." This

provision is contrary to the HSCA, which provides that the health club to

"may retain a prorated share of the total contract price based upon the date the notice

was received plus reimbursement for expenses incurred in an amount not to exceed

10%." N.J.S.A. 56:8-42(g).

f.   The Membership Agreement does not set forth on the first page of the

Agreements the buyer's total payment obligation under the contract, pursuant

to N.J.S.A. 56:8-42(b).

g.   The Membership Agreement states that "if any part of this agreement is held

by a court or competent jurisdiction to be void or unenforceable, the

remainder of the terms and provisions of this contract shall remain in full

force and effect and shall not be affected." This provisoin is in violation of

N.J.S.A. 56:12-16 which states, "No consumer contract, notice or sign shall state

that any of its provisions is or may be void, unenforceable or inapplicable in some

jurisdictions without specifying which provisions are or are not void, unenforceable

or inapplicable within the State of New Jersey.

65.   Each unlawful contract provision listed in the preceding paragraph constitutes a

separate violation of TCCWNA.

66.   Additionally, the Membership Agreement is subject to the New Jersey Retail

Installment Sales Act (RISA) because it squarely meets the definition of "Retail Installment

Contract" set forth at N.J.S.A. 17:16C-1, which is "any contract... entered into in this State ...

evidencing an agreement to pay the retail purchase price of goods or services, which are

primarily for personal, family or household purposes, or any part thereof, in two or more

installments over a period of time."

17

67.   The Membership Agreement provides for the sale of a finite quantity of health club services (in Plaintiff's sale, one year), obligating the buyer for the entire purchase price as evidenced by the acceleration clause, but permitting payment over time in two or more installments.

68.   RISA at N.J.S.A. 17:16C-50 prohibits any fees or penalties other than those specifically set forth and authorized by RISA.

69.   The Defendants' standard Membership Agreement includes several provision imposing fees that are not authorized by, and therefore are precluded by RISA, including, without limitation:

   a.   A $50 "enrollment fee,"

   b.   a $19.99 "club enhancement fee,"

   c.   a $5 montly dues increase in the event that an EFT payment is declined,

   d.   an unspecified "late fee" if a monthly installment payment is revied more than 10 days late.

70.   Each unlawful contract provision listed in the preceding paragraph constitutes a separate violation of TCCWNA.

**SECOUND COUNT (On Behalf of Plaintiff and Subclass #1)**
**Violations of the Consumer Fraud Act ("CFA") N.J.S.A. 56:8-1 *et seq.* and the Health Club**
**Services Act, N.J.S.A 56:8-39-48, arising from Defendants' practice of charging dues after**
**Members Requests to Discountinue Services**

71.   Plaintiff realleges all preceding allegations as though fully pled here.

72.   Defendants have engaged in a pattern and practice of deceptive and unconscionable commercial conduct in violation of the CFA at N.J.S.A. 56:8-2, including, without limitation:

   a.   Despite there being an identified term, the Membership Agreement

18

requires the member to cancel the contract by providing a full 30 days written notice from the next billing date. Defendants effectively extend the membership for at least 30 days after the member has mailed a cancellation notice if the member mails written cancellation notice that is postmarked less than 30 days prior to the next billing date.

b. Charging membership fees after the membership's term has expired.

c. Charging membership fees after members have communicated requests to cease automatic renewal.

d. Imposing a 30-day notice requirement as a condition subsequent for the customer to avoid automatic renewal of the contract for an additional month, without substantial commercial justification beyond discouraging and impeding "cancellations" of the perpetual, automatically renewing monthly memberships.

e. Requiring that notice be given at Defendants' office at a specific address, rather than at the New Jersey health club location where services initiated, as a condition subsequent for the customer to avoid automatic renewal of the contract for an additional month, without substantial commercial justification of this condition beyond discouraging and impeding "cancellations" of the perpetual, automatically renewing monthly memberships.

f. Adopting policies and practices for customer "cancellation" of the automatic monthly renewal provision of its standard Membership Agreement that creates an unreasonable risk of causing customers to pay for one or more months' of unwanted services.

19

73.   Defendants further violated the CFA by entering into standard Membership Agreements that violate the HCSA at N.J.S.A. 56:8-42(i), which prohibits health clubs from entering into contracts that obligate members to renew their contracts.  Defendants' standard contract obligates the member to renew their contracts on a monthly basis in perpetuity after expiration of the initial term, absent the member's satisfaction of conditions precedent, including but not limited to sending notice of non-renewal by registered or certified mail, thus necessitating both the taking of an action and incurring the unnecessary expense of special delivery by the member in order to extinguish the obligation to renew.

74.   Plaintiff and the putative Subclass have suffered ascertainable loss caused by the Defendants' violations of the CFA in the amount of all monthly dues collected by Defendants subsequent to Defendants receiving communication that the member no longer wants services.

### RELIEF REQUESTED

WHEREFORE, Plaintiff requests judgment for himself and others similarly situated against the Defendants, jointly and severally, as follows:

    a.  Certification of the Class and Subclasses defined herein pursuant to R. 4:32-1(b)(3) and (b)(2).

    b.  As to the entire Class, statutory damages of not less than $100 for each offense pursuant to TCCWNA. N.J.S.A. 56:12-17;

    c.  As to the Subclass treble damages, pursuant to the CFA, N.J.S.A. 56:8-19, or alternatively a refund pursuant to the CFA, N.J.S.A. 56:8-2.11;

    d.  For reasonable attorneys' fees and costs of suit in connection with the action pursuant to the CFA, N.J.S.A. 56:8-19, and TCCWNA, N.J.S.A. 56:12-17, and all other applicable statutes.

20

e. For pre-judgment and post-judgment interest;

f. For injunctive relief prohibiting future violations of the HCSA, CFA, RISA, and TCCWNA;

g. For such other and further relief as the Court deems equitable and just.

## JURY DEMAND

Plaintiff demands a trial by jury on all issues subject to trial.

## NOTICE TO ATTORNEY GENERAL OF ACTION

A copy of the complaint will be mailed to the Attorney General of the State of New Jersey within ten days after the filing with the Court, pursuant to N.J.S.A. 56:8-20.

## TRIAL COUNSEL DESIGNATION

The Class Plaintiffs designate as trial counsel: Joseph LoPiccolo of Poulos LoPiccolo PC and Andrew R. Wolf of the The Wolf Law Firm, LLC.

21

## CERTIFICATION

I hereby certify that, to the best of my knowledge, the matter in controversy is not the subject of any other action pending in any court or the subject of a pending arbitration proceeding, nor is any other action or arbitration proceeding contemplated. I further certify that that I know of no party that is necessary to be joined in the action at this time.

Dated: June 29, 2015

POULOS LOPICCOLO PC

By: _____
Joseph LoPiccolo
John N. Poulos

1305 South Roller Road
Ocean, NJ 07712
732-757-0165
lopiccolo@pllawfirm.com
poulos@pllawfirm.com

**THE WOLF LAW FIRM, LLC**
Andrew R. Wolf
Henry P. Wolfe
1520 U.S. Highway 130, Suite 101
North Brunswick, N.J. 08902
732-545-7900
awolf@wolflawfirm.net

*Attorneys for Paul Logan on behalf of himself and others
similarly situated*

22